UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED

2015 DEC 28  PM 3: 37

**TRINA HOLLAND,**

    *Plaintiff,*

    v.

**FRANKLIN CREDIT MANAGEMENT
CORPORATION, EQUIFAX
INFORMATION SERVICES, LLC, and
TRANS UNION LLC,**

    *Defendants.*

Case No.:   6:15-cv-2178-01-22KRS

Ad Damnum: $128,000 + Atty Fees / Costs

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **TRINA HOLLAND** ("**Ms. Holland**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants: **FRANKLIN CREDIT MANAGEMENT CORPORATION** ("**Franklin**"); **EQUIFAX INFORMATION SOLUTIONS, LLC,** ("**Equifax**"); and, **TRANS UNION LLC** ("**Trans Union**"), (jointly, "**The Defendants**"), and states as follows:

### PRELIMINARY STATEMENT

1.  This is an action brought by Ms. Holland, an individual consumer, pursuant to various consumer protection statutes, specifically, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**"), the Fair Credit Reporting Act ("**FCRA**"), 15 U.S.C. § 1681, *et. seq.*, the Florida Consumer Collection Practices Act ("**FCCPA**"), Section 559.55, Florida Statutes, *et. seq.*, and the Telephone Consumer Protection Act, 47 U.S.C. §227, *et. seq.* ("**TCPA**"), against:

    (a)    Defendant Franklin for violations of the FDCPA, FCCPA, and TCPA;

    (b)    Defendant Equifax for violations of the FCRA; and,

    (c)    Defendant Trans Union for violations of the FCRA.

## JURISDICTION AND VENUE

2.     Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, the FCCPA, Section 559.77(1), Florida Statutes, and the TCPA, 47 U.S.C. § 227(b)(3).

3.     Franklin is subject to the provisions of the FDCPA, TCPA, and FCCPA.

4.     Equifax is subject to the provisions of the FCRA.

5.     Trans Union is subject to the provisions of the FCRA.

6.     Each of the Defendants is subject to the jurisdiction of this Court pursuant to 28 U.S.C § 1331.  Supplemental jurisdiction arises for state law claims under 28 U.S.C. § 1367.

7.     Venue is proper in this District because the events giving rise to this cause of action occurred within this District.  28 U.S.C. §§ 1391(b) and (d).

## PARTIES

8.     Ms. Holland is a natural person who resided in Orange County, Florida at all times relevant and is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Section 559.55(8), Florida Statutes.

## PARTIES - FRANKLIN

9.     Franklin is a Delaware corporation with a primary business address of 101 Hudson Street, 25th Floor, Jersey City, NJ 07302.

10.    Franklin's Florida Registered Agent for service of process is Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.

11.    Franklin is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes in that it regularly collects or attempts to collect, directly or indirectly, consumer debts originally due to another entity.  In the instant matter, Franklin was collecting on a mortgage originated by a third-party and not owned by Franklin.

12.    Franklin is licensed as a consumer collection agency by the Florida Office of Financial Regulation, holding license number **CCA9902149. SEE PLAINTIFF'S EXHIBIT A.**

## PARTIES - EQUIFAX

13.    Equifax is a Georgia limited liability company with a primary business address of 1550 Peachtree St NW, Atlanta, GA 30309.

14.    Equifax's Florida Registered Agent for service of process is Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.

15.    Equifax is a nationwide consumer credit reporting agency ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that Equifax, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

## PARTIES – TRANS UNION

16.    Trans Union is a Delaware limited liability company with a primary business address of 555 West Adams St., Chicago, IL 60661.

17.    Trans Union's Florida Registered Agent for service of process is The Prentice-Hall Corporation System, Inc., 1201 Hays St., Tallahassee, FL 32301.

18.    Trans Union is a nationwide consumer credit reporting agency ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that Trans Union, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

## FACTUAL ALLEGATIONS

19.     Sometime around June 2005, Ms. Holland obtained a first and second mortgage for her personal residence in Jefferson County, West Virginia ("**The Debt**").

20.     The Debt arose from services which were primarily for family, personal, or household purposes, specifically, a loan for Ms. Holland's personal residence, and meets the definition of "debt" under 15 U.S.C. § 1692a(5) and 559.55(6), Florida Statutes.

21.     In or around 2007, due to economic circumstances beyond her control, Ms. Holland was no longer able to make payments on her mortgages.  She made her last payment in 2007.

22.     On or about November 25, 2008, Seneca Trustees, Inc., and Deutsche Bank National Trust Company, as trustee for Morgan Stanley ABS Capital I Inc. Trust 2005-HE6, filed a deed of foreclosure in Jefferson County, West Virginia, due to non-payment of the mortgages.

23.     Sometime after this, the originator or the successor-in-interest to the Debt sold, assigned, placed for collection, or otherwise transferred the Debt to Franklin for collection purposes.

24.     Upon information and belief, The Debt was transferred to Franklin in March 2012.

25.     In or around May 2012, Franklin reported the Debt to CRAs Trans Union and Equifax. **SEE PLAINTIFF'S EXHIBITS B and C.**

26.     Franklin reported to the CRAs that the "date of first delinquency" ("**DOFD**"), *i.e.*, that the date the debt *originally* became delinquent (30 days past due), was in March 2012, roughly five years later than the true 2007 DOFD.

27.     The DOFD is used by the CRAs to comply with the 7-year maximum reporting period prescribed by the FCRA, 15 U.S.C. § 1681c(a)(4).   When Franklin reported a later DOFD, the CRAs continued to publish the tradeline longer than allowed under the FCRA.

28.     Upon information and belief, Trans Union's and Equifax's policy is to purge collection tradelines once the DOFD is six years and eleven months old.

29.     While Franklin's report to Trans Union indicated that the Debt first became delinquent in March 2012, it also stated that by May 2012, the Debt had become more than 120 days past due. **SEE PLAINTIFF'S EXHIBIT C.**

30.     Because of the number of days in each month in the Julian calendar, a 30-day delinquent debt reported on a given day in March cannot be 120 days delinquent on that same day in May.

31.     Ms. Holland's Equifax consumer disclosure more clearly shows how Franklin reported a DOFD of March 2012. **SEE PLAINTIFF'S EXHIBIT B.**

32.     Franklin's report to Equifax was even more extreme, stating a DOFD in March 2012 while also stating that, by May 2012, just two months later, the account had become more than *180 days* past due. **Id.**

33.     Despite the logical fallacies of Franklin's reporting, both CRA defendants accepted Franklin's reporting, without question, and incorporated it into their reports which they provided to third-parties.

34.     Both Equifax and Trans Union lack policies which prevent furnishers of information from reporting data which is logically impossible.   The reporting of such information does not trigger any scrutiny, flagging, or other indicia that the information is, by necessity, incorrect. Rather, such information is published as fact on a consumer's credit report.

35.     It was unreasonable for either CRA defendant to accept Franklin's false and deceptive report, since it contained data which could not be true.

36.     On or about January 22, 2015, Franklin requested a copy of Ms. Holland's Trans Union consumer credit report. The report contained her current cell phone number, (321) 696-1335 ("**cell phone number**"). A record of the inquiry was logged by Trans Union. **SEE PLANTIFF'S EXHIBIT C.**

37.     On or around April 25, 2015, Ms. Holland applied for a home loan guaranteed through the Federal Housing Administration ("**FHA**") with Primary Residential Mortgage ("**Primary**").

38.     As part of the application process, Primary obtained copies of Ms. Holland's Equifax, Experian, and Trans Union reports and FICO credit scores.

39.     Primary obtained the report from Credco, a re-seller of credit reports.

40.     Credco sells "Tri-Merge" credit reports which contain a consumer's Equifax, Experian, and Trans Union reports merged into one composite report.

41.     All three CRAs sold Primary reports which contained Franklin's false and misleading data. **SEE PLANTIFF'S EXHIBIT D.**

42.     On information and belief, but for Franklin's misreporting of the DOFD, Franklin's tradeline would not have appeared on any credit report produced in April 2015, because the true date of first delinquency was beyond the period when the CRAs would have purged the tradeline from their reports.

43.     Further, Franklin's tradelines should not have appeared because each of the CRAs should have recognized that a report indicating a mortgage was one (1) month past due in March 2012 and yet somehow six (6) months past due in May 2012 was flawed and inaccurate.

44.     Franklin's false reporting, in combination with the CRAs' lack of any procedure to suppress logically-flawed data, caused Ms. Holland's prospective lender, Primary, to receive a report indicating that Ms. Holland had defaulted on a second mortgage in March 2012, and believed that Ms. Holland was ineligible for an FHA-guaranteed mortgage.

45.     Despite the inclusion of an incorrect tradeline, Ms. Holland's credit score was adequate for financing; however, the falsely-reported recent default on a mortgage prevented Ms. Holland from obtaining a mortgage.

46.     Because of the false information reported by Franklin, and because the CRAs incorporated this false information into their reports, the CRAs would have allowed the Franklin tradeline to remain on Ms. Holland's credit report for more than 10 years, far longer than the FCRA allows, and would have continued to publish the information until 2019, when the true DOFD was 2007, and the tradeline should have been purged.

47.     Most credit scoring systems heavily weigh the reported DOFD of a collection account when computing a credit score; the more recent the DOFD, the more negative impact the tradeline has on a credit score. Therefore, Franklin's false reporting caused unfair damage to Ms. Holland's credit scores.

48.     Trans Union incorporated Franklin's obviously-flawed information into other credit reports it sold regarding Ms. Holland to other parties, including:

a) July 31, 2014 to CapitalOne Auto Finance
b) May 6, 2015 and April 3, 2015 to Premier Bank
c) April 1, 2015 to Capital One Bank USA, NA
d) March 16, 2015 to Credit First Bank, NA
e) March 8, 2015 to Diversified Consultants
**SEE PLANTIFF'S EXHIBIT C.**

f) September 28, 2014 to Midland Credit Management
g) June 13, 2014 to GM Financial
h) March 5, 2014, January 19, 2014, December 24, 2013, December 9, 2013 and October 24, 2013 to Mobiloans LLC
i) January 22, 2014 to Chase Receivables

49.     Equifax produced and sold seven credit reports regarding Ms. Holland containing the clearly-defective Franklin tradeline on the following dates:

a) April 25, 2015, July 31, 2014 and March 19, 2014, to Credco

b) July 31, 2014 to Capital One
c) July 31, 2014 to Southwest Toyota Finance

d)November 16, 2013 to Citibank, NA        e)October 10, 2013 to First Premier Bank
**SEE PLANTIFF'S EXHIBIT E.**

50.    The contact information Franklin reported in its tradeline to Equifax is "6 Harrison St Fl 6 Corp New York, NY 10013-2883 (212) 925-8745." **SEE PLANTIFF'S EXHIBIT B.**

51.    Calling the phone number (212) 925-8745 results in a message stating the number is disconnected.

52.    On information and belief, Franklin does not transact business at 6 Harrison Street in New York.

53.    Having obtained Ms. Holland's cellular telephone number from her credit report, throughout 2015, and possibly earlier, Franklin placed numerous calls to Ms. Holland's cell phone via an Automated Telephone Dialing System ("**ATDS**" or "**automated dialer**") as defined by the TCPA at 47 U.S.C. § 227(a)(1).

54.    Ms. Holland never provided consent, express or otherwise, to Franklin to be called on her cell phone number via ATDS.

55.    Ms. Holland never provided the original creditor with her cell phone number, or consent to be called on her cell phone number via ATDS.

56.    In fact, Ms. Holland did not have her current cell phone number until 2011 - years after the foreclosure on her home.

57.    Despite knowing that it lacked the requisite express consent, Franklin placed at least 70 calls from February 2015 through the end of June 2015. **SEE PLANTIFF'S EXHIBIT F.**

58.    None of Franklin's calls were for emergency purposes.

59.     The calls from Franklin showed a Caller ID of 866-269-5703, a number owned by, or utilized by, Franklin.

60.     Typically, when Ms. Holland would answer the phone, there would be "dead air" and a delay of approximately 7 to 10 seconds prior to a Franklin representative coming on the line; when Ms. Holland would repeat, "Hello?  Hello?," nobody would respond until some time after.

61.     Delays of this nature are common with ATDS's because a computerized dialing system places the call, and when it senses that a call has been answered, it looks for an available live agent to route the call to, a process which often takes 5 to 10 seconds or more.

62.     In some instances, when Ms. Holland answered, there would be nothing but dead air with nobody coming on the line.  These instances include, without limitation, June 22, 2015 at 4:02 PM, and June 24, 2015 at 1:51 PM.

63.     This is likely due to the fact that in some cases, the ATDS cannot find a live agent and ends the call, or other technical malfunction ensues.

64.     On June 5, 2015, Franklin placed a call to Ms. Holland's cell phone at 9:01 PM. **SEE PLAINTIFF'S EXHIBITS F and G.**

65.     While Ms. Holland is aware of at least 70 calls, the total number of calls is unknown to Ms. Holland but is or should be known to Franklin, and contained in its business records and/or the records of its ATDS or caller service.

66.     Franklin's credit reporting and phone calls are "communications" pursuant to 15 U.S.C. § 1692a(2) and Section 559.55(2), Florida Statutes.

67.     Reporting a debt to a CRA is an attempt to collect a debt alleged therein.

68.     Ms. Holland has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees.

<u>COUNT I</u>
<u>VIOLATIONS OF THE FDCPA – Franklin</u>

69.     Ms. Holland adopts and incorporates paragraphs 1 - 68 as if fully stated herein.

70.     When Franklin knowingly reported a false DOFD and a false address and disconnected phone number to the CRAs, it violated **15 U.S.C. § 1692e and § 1692e(10)** by using a false, deceptive, or misleading representation in connection with the collection of a debt.

71.     Franklin's conduct violated **15 U.S.C. § 1692e(2)(a)** in that Franklin made false representations about the character and legal status of a debt by knowingly reporting a false DOFD.

72.     Franklin's conduct violated **15 U.S.C. § 1692f** in that Franklin used unfair and unconscionable means to collect a debt, by reporting a false DOFD, thereby causing undue damage to Ms. Holland's credit scores and causing its tradeline to appear on Ms. Holland's credit report in 2015 as a recent debt.

73.     Franklin's conduct violated **15 U.S.C. § 1692e(5)**  in that Franklin threatened, via its credit reporting, to engage in action which legally could not be taken, *i.e.*, to report its tradeline for a time period beyond the FCRA reporting period and as a more recent debt than it actually was.

74.     Franklin's conduct violated **15 U.S.C. § 1692e(5)** in that Franklin threatened to engage in action which legally could not be taken, *i.e.*, to call Ms. Holland on her cell phone via ATDS without prior express consent.

75.     Franklin's conduct violated **15 U.S.C. § 1692e(8)** in that Franklin communicated credit information known to be false, to wit, it reported to the CRAs that the DOFD was March 2012, when Franklin knew the true DOFD was many years earlier.

76.     Franklin's conduct violated **15 U.S.C. § 1692c(1)** in that Franklin placed a call to Ms. Holland's cell phone after 9:00 PM.

77.     As a result of the foregoing violations of the FDCPA, Ms. Holland is entitled to statutory damages and recovery of her attorneys' fees and costs.

**WHEREFORE**, Ms. Holland respectfully requests this Honorable Court enter judgment against Franklin for:

a.     Statutory damages of **$1,000.00** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.     Unspecified actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.     Such other relief that this Court deems just and proper.

**COUNT II**
**VIOLATIONS OF THE FCCPA – Franklin**

78.     Ms. Holland adopts and incorporates paragraphs 1 - 68 as if fully stated herein.

79.     Franklin's conduct violated Section **559.72(9)**, Florida Statutes, in it asserted a right which does not exist, to wit, the right to place calls to Ms. Holland's cell phone via ATDS without prior express consent, when such action is prohibited by federal law.

80.     Franklin's conduct violated Section **559.72(17)**, Florida Statutes, in that it communicated with Ms. Holland between the hours of 9 p.m. and 8 a.m. in her time zone without her prior consent.

81.     Franklin's actions were willful and intentional as demonstrated by the fact that it obtained Ms. Holland's cellular telephone number by obtaining her credit report, despite knowing that it needed Ms. Holland's express consent to call her on that number.

82.     Franklin is liable for the above-stated violations of the FCCPA, and Ms. Holland is entitled to statutory damages not to exceed $1,000, as well as recovery of her attorneys' fees and costs.

83.     **WHEREFORE**, Ms. Holland respectfully requests this Honorable Court enter judgment against Franklin for:

a.      Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.      Unspecified actual damages pursuant to Section 559.77(2), Florida Statutes;

c.      Reasonable costs and attorneys' fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

d.      Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE TCPA – Franklin

84.     Ms. Holland adopts and incorporates paragraphs 1 - 12, 53 - 68 as if fully stated herein.

85.     Franklin violated **47 U.S.C. § 227(b)(1)(A)(iii)** when it repeatedly called Ms. Holland's cellular phone number using an automated dialing mechanism without her express consent for non-emergency purposes.

86.     Franklin's violations of the TCPA were intentional because it knew that Ms. Holland never expressly consented to receiving automated calls, having only obtained her cellular phone number through a CRA report or other skip-tracing mechanism.

87.     Franklin either negligently or willfully and knowingly auto-dialed Ms. Holland's cellular phone number for non-emergency purposes without Ms. Holland's express consent.

88.     Franklin is liable to Ms. Holland for either negligently or willfully and knowingly failing to comply with the TCPA.

89.     Ms. Holland is entitled to injunctive relief from potential future violations of the TCPA.

**WHEREFORE,** Ms. Holland respectfully requests that this Honorable Court enter judgment against Franklin for:

a.      Statutory damages of **$1,500** for each willful violation of the TCPA found to have been committed, pursuant to 47 U.S.C. § 227(b)(3), a figure of **$105,000** based on the 70 calls known to Ms. Holland at this time;

b.      In the alternative, statutory damages of **$500** for each negligent violation of the TCPA found to have been committed, pursuant to 47 U.S.C. § 227(b)(3)(B), a figure of **$35,000** based on the 70 calls known to Ms. Holland at this time;

c.      Equitable relief enjoining Franklin from further violations of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(A); and,

d.      Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE FCRA – Trans Union

90.     Ms. Holland adopts and incorporates paragraphs 1 – 8, 16 - 18, 19 - 48, and 68 as if fully stated herein.

91.     Trans Union's conduct violated **15 U.S.C. § 1681e(b)** in that it produced a consumer credit report on **fourteen (14)** different occasions regarding Ms. Holland but failed to follow reasonable procedures to assure maximum possible accuracy of the reports as required by 15 U.S.C § 1681e(b) by including Franklin's obviously-flawed tradeline in its report.

92.     The danger to Ms. Holland of Trans Union's inclusion of highly adverse but false information on a credit report was easily foreseen by Trans Union, as it is clear that including a

"stale-dated" debt in her credit report could prevent Ms. Holland from obtaining a mortgage, particularly when it was on notice by the report itself that the report was incorrect.

93.     Trans Union's conduct was willful and intentional, or, alternately, was performed with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm.

94.     As a result of its conduct, Trans Union is liable to Ms. Holland pursuant to the FCRA for statutory damages of up to $1,000 for each occurrence, and other relief.

**WHEREFORE,** Ms. Holland respectfully requests this Honorable Court enter judgment against Trans Union for:

a.     The greater of statutory damages of **$1,000.00** per incident (for a total of **$14,000**), pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. Holland's unspecified actual damages for loss of credit opportunities, higher interest rates, and related economic and non-economic injuries, pursuant to 15 U.S.C. § 1681o(a)(1);

b.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for Trans Union's outrageous conduct towards Ms. Holland;

c.     Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

d.     Such other relief that this Court deems just and proper.

### COUNT V
### VIOLATIONS OF THE FCRA – Equifax

95.     Ms. Holland adopts and incorporates paragraphs 1 – 8, 14 - 15, 19 - 47, 49, and 68 as if fully stated herein.

96.     Equifax's conduct violated 15 U.S.C. § **1681e(b)** in that it produced a consumer credit report on seven (7) different occasions regarding Ms. Holland but failed to follow

reasonable procedures to assure maximum possible accuracy of those reports as required by law by including Franklin's obviously-flawed tradeline in its report.

97.     The danger to Ms. Holland of Equifax's inclusion of highly adverse but false information on a credit report was easily foreseen by Equifax, as it is clear that including a "stale-dated" debt in her credit report could prevent Ms. Holland from obtaining a mortgage, particularly when it was on notice by the report itself that the report was incorrect.

98.     Equifax's conduct was willful and intentional, or, alternately, was performed with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm.

99.     As a result of its conduct, Equifax is liable to Ms. Holland pursuant to the FCRA for statutory damages of up to $1,000 for each occurrence, and other relief.

**WHEREFORE,** Ms. Holland respectfully requests this Honorable Court enter judgment against Equifax for:

a.      The greater of statutory damages of **$1,000.00** per incident (for a total of **$7,000**), pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. Holland's unspecified actual damages for loss of credit opportunities, higher interest rates, and related economic and non-economic injuries, pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for Equifax's outrageous conduct towards Ms. Holland;

c.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

d.      Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Holland demands a trial on all issues so triable.

Respectfully submitted this 23rd day of December, 2015, by:

> /s/*Christina M. Cowart*
> Christina M. Cowart
> Florida Bar Number: 27644
> Seraph Legal, P. A.
> 2002 E. 5th Ave., Suite 104
> Tampa, FL 33605
> (813) 567-1230
> CCowart@seraphlegal.com
> Attorney for Plaintiff